| | | |
|---|---|---|
| Landmark American Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 02552 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Michael O'Malley, O'M and Associates LLC | ) | |
| d/b/a O'Malley and Associates, and | ) | |
| Peter Hilger, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Landmark American Insurance Company filed this action against

Defendants Michael O'Malley, O'M and Associates LLC d/b/a O'Malley and

Associates (O'MA), and Peter Hilger, seeking a declaration that Landmark has no

duty to defend these three Defendants in two Underlying Lawsuits, one in Michigan

(the Michigan Lawsuit[1]) and one in Tennessee (the Tennessee Lawsuit[2]). R. 27,

First Am. Compl.[3] At the same time, Defendants seek the opposite declaration: that

Landmark *does* have a duty to defend Defendants in both Underlying Lawsuits. R.

29, Hilger's Counterclaims; R. 32, O'Malley's Counterclaims. Each Underlying

Lawsuit arises from Defendants' alleged failures to fulfill their duties and

---

[1]The Michigan Lawsuit, *Alliance Catholic Credit Union v. Allied Solutions, LLC*, No.
130077, was filed in the United States District Court for the Eastern District of Michigan.
*See* R. 27-1, Pl.'s Exh. A, Mich. Compl.

[2]The Tennessee Lawsuit, *Southeast Financial Credit Union v. Abacus Settlements,
LLC*, No. 40966, was filed in the Chancery Court for Williamson County, Tennessee. *See* R.
27-2, Pl.'s Exh. B, Tenn. Compl.

[3]Citations to the docket are indicated by "R." followed by the docket entry. The Court
has subject matter jurisdiction over this case based on 28 U.S.C. § 1332.

obligations in a series of secured loan transactions with various credit unions. Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). R. 56, Defs.' Mot. J. Pleadings; R. 60, O'Malley's Br. For the reasons explained below, Defendants' motions are granted.

## I. Background

## A. The Landmark Policy

Landmark issued an Insurance Agents and Brokers Professional Liability Policy to O'MA. R. 27-5, Pl.'s Exh. E, Landmark Policy. The Landmark Policy covers O'MA as the "Named Insured," *see id.* Decls., as well as the following relevant "Covered Persons and Entities" (the second paragraph is the relevant one):

**Part I. Insuring Agreement, E. Covered Persons and Entities**

1. Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, but only with respect to the professional services rendered by or on behalf of the Named Insured;

2. Any present or former principal, partner, officer, director, employee, or independent contractor of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured . . . .

*Id.* Pt. I.E. But the Landmark Policy also contains Exclusion D, which excludes coverage for any claims "based upon or arising out of . . . [a]ny business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured." *Id.* Pt. II.D.

## B. The Underlying Lawsuits

Both Underlying Lawsuits arose from misrepresentations that Defendants allegedly made to credit unions in Michigan and Tennessee. In both states,

Defendants allegedly persuaded credit unions to fund several secured loans by overstating the value of life insurance policies that would serve as collateral for the loans. First Am. Compl. ¶¶ 13-14, 33-41, 48; *see also* Mich. Compl. ¶¶ 10-14, 29; Tenn. Compl. ¶¶ 16-17, 19, 43, 48. The credit unions claim to have lost more than $1,000,000 as a result of relying on Defendants' misrepresentations. Mich. Compl. ¶ 1; Tenn. Compl. ¶ 49.

Because of their losses, the credit unions filed lawsuits against O'Malley, O'MA, and Hilger. Mich. Compl.; Tenn. Compl. The credit unions also named Allied Solutions (Allied, or Hilger's employer), Daniel Phillips, Capital Lending Strategies (CLS, or Phillips's employer), and others as defendants in the Underlying Lawsuits. *See* Mich. Compl. ¶¶ 5-8; Tenn. Compl. ¶¶ 4, 6. (These additional parties are not named in this lawsuit here.) The Michigan Complaint alleges that each defendant is jointly liable for fraud, innocent misrepresentation, negligence, conspiracy, and breach of contract. Mich. Compl. ¶¶ 551-586, 597-600. The Michigan Complaint also includes alternative theories of liability including joint-venture liability against Allied, CLS, and O'Malley; individual liability against Hilger and Phillips; and respondeat superior liability against Allied and CLS. *Id.* ¶¶ 587-596, 601-602. The Tennessee Complaint alleges that the underlying defendants are liable for negligence, negligent misrepresentation, and unjust enrichment, among other claims. Tenn. Compl. ¶¶ 50-58, 85-87.

## C. The Present Declaratory-Judgment Action

In July 2013, Plaintiff Landmark filed this action seeking a declaration that it has no duty to defend Defendants O'Malley, O'MA, and Hilger in either Underlying Lawsuit (Counts I, III, V, and VII).[4] First Am. Compl. ¶¶ 65-71, 77-81, 88-93, 101-105. Defendants counterclaimed, seeking a declaration that Landmark does have a duty to defend O'Malley, O'MA, and Hilger in the Underlying Lawsuits. Hilger's Counterclaims ¶¶ 25-29 (Count I); O'Malley's Counterclaims ¶¶ 25-34 (Counts I and II). Because this coverage dispute turns on the Landmark Policy and the allegations in the Underlying Lawsuits, Defendants now move for judgment on the pleadings. Defs.' Mot. J. Pleadings; O'Malley's Br.[5]

## II. Legal Standard

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*,

---

[4]Landmark originally sought declarations that it also had no duty to indemnify Defendants in the Underlying Lawsuits, but those claims have already been voluntarily dismissed. R. 38, Stip. Dismiss Counts II, IV, VI, VIII & X; *see also* First Am. Compl. ¶¶ 72-76, 82-87, 94-100, 106-112, 120-122.

In addition to these duty-to-defend and duty-to-indemnify claims, there is one remaining claim in Landmark's Complaint—Count IX—that neither party addresses in this motion. *See* R. 63, Pl.'s Resp. Br. at 4 n.6. In Count IX, Landmark requests a declaration that it has no duty to defend O'MA and O'Malley in any action brought against them by Hilger. *See* First. Am. Compl. ¶¶ 113-119. Count IX has since become moot because Hilger has dropped all claims against O'MA and O'Malley. R. 66, Stip. Dismiss Hilger's Crossclaim. Because the Court may raise subject-matter-jurisdiction issues *sua sponte*, the Court dismisses Count IX for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

[5]Hilger seeks a judgment on the pleadings for Counts I and V of Landmark's Complaint, and Count I of Hilger's Counterclaims. Defs.' Mot. J. Pleadings. O'MA and O'Malley join Hilger's motion for judgment on the pleadings and also seek a judgment on the pleadings for Counts III and VII of Landmark's Complaint, and Counts I and II of O'Malley and O'MA's Counterclaims. O'Malley's Br. at 1-2.

670 F.3d 810, 813 (7th Cir. 2012). In ruling on a motion for judgment on the pleadings, the Court must accept all well-pled allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Id.* Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support his claim for relief. *Id.* In ruling on a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits (so long as the exhibits do not necessitate converting the motion to a summary-judgment motion). *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

### III. Analysis

In this insurance coverage dispute, Landmark argues that it has no duty to defend Hilger in the Underlying Lawsuits because Hilger is not a "covered person" under the Landmark Policy. Landmark also argues that it has no duty to defend O'Malley, O'MA, and Hilger because Defendants formed a joint venture that falls within Exclusion D under the Landmark Policy. The Court addresses each of these arguments in turn.

### A. Duty-to-Defend Standard

Under Illinois law,[6] the interpretation of an insurance policy is a question of law. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073,

---

[6]The Court must apply state substantive law in diversity cases. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, the Landmark Policy is silent as to which state's law governs, but because both parties assume that Illinois law governs this coverage

1077 (Ill. 1993). An insurer's duty to defend its insured is much broader than its duty to indemnify. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). "Whether an insurer must defend the insured is a question resolved by comparing the allegations of the underlying complaint against the insured to the insurance policy." *Conn. Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 349 (7th Cir. 2003) (citing *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 847 (Ill. 1995)). "If the facts alleged in the underlying complaint fall within or even potentially within policy coverage, the insurer has a duty to defend its insured against the complaint." *Lapham-Hickey Steel Corp.*, 655 N.E.2d at 847. The key "is not the legal label that the [underlying] plaintiff attaches to the [insured's] conduct, but whether that conduct as alleged in the [underlying] complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994). If the underlying complaint alleges several theories of recovery against the insured, the insurer is obligated to provide a complete defense to all the claims even if only one such theory falls within the potential coverage of the policy. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006). The insurer has the burden of proving that an exclusion applies, while the insured has the burden of proving that an exception to an exclusion restores coverage. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010).

---

dispute, the Court will join in that assumption. *Cf. Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993).

In determining whether a duty to defend exists, the underlying complaints and insurance policy must be construed liberally, resolving all doubts in the insured's favor. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). "Where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary and popular sense." *Id.* (internal quotation marks and citation omitted). But "if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).

With these principles in mind, the Court now considers whether Landmark's duty to defend has been triggered.

**B. Landmark's Duty to Defend Hilger**

Landmark contends that it has no duty to defend Hilger in the Underlying Lawsuits because Hilger is not a "covered person" under the Landmark Policy. *See* Pl.'s Resp. Br. at 6-8. The Landmark Policy lists only O'MA as the "Named Insured," *see* Landmark Policy Decls., and Landmark argues that Hilger does not fall within the Landmark Policy's definition of "Covered Persons and Entities," which includes "[a]ny present or former principal, partner, officer, director, employee, or independent contractor" of O'MA. Pl.'s Resp. Br. at 6-8; *see also* Landmark Policy, Pt. I.E.2. Landmark and Defendants disagree about whether Hilger worked as an independent contractor for O'MA, a status that would qualify him for coverage under the Policy. *See* Pl.'s Resp. Br. at 6-8; R. 58, Hilger's Br. at 11. To resolve this

dispute, Landmark asks the Court to deny Defendants' motions and instead to permit discovery on Hilger's relationship with O'MA. Pl.'s Resp. Br. at 9.

Discovery is not needed to resolve this dispute at the duty-to-defend stage. If the allegations in the Underlying Complaints fall potentially within the Policy's coverage, Landmark's duty to defend is triggered. *Lapham-Hickey Steel Corp.*, 655 N.E.2d at 847. And where the allegations are ambiguous, doubts should be resolved in favor of the insured. *Wilkin Insulation Co.*, 578 N.E.2d at 930.

Here, the allegations in the Underlying Complaints offer competing accounts of Hilger's relationship with O'MA. On the one hand, the Complaints suggest that Hilger was acting as an agent of his employer, Allied. *See, e.g.*, Mich. Compl. ¶ 602 ("Hilger . . . committed the acts and omissions attributed to [him] in this complaint while in the course and within the scope of [his] agency relationship with Allied . . . ."); Tenn. Compl. ¶ 6 ("At all times relevant to this Complaint, Mr. Hilger operated under the scope and authority of Allied as its agent."). On the other hand, the Michigan Complaint also describes Hilger, O'Malley, and O'MA as "act[ing] in concert according to a common design," Mich. Compl. ¶¶ 555, 598, and the Complaint also repeatedly refers to Hilger's role in a "collaboration" that included O'Malley, as well as Allied and the credit unions, *see, e.g.*, *id.* ¶¶ 23, 57. Similarly, the Tennessee Complaint describes Hilger as "acting either individually or through" O'MA. Tenn. Compl. ¶ 15. It is true that these allegations paint an ambiguous picture of Hilger's relationship with O'Malley and O'MA. But when this type of ambiguity exists, the allegations should be construed in favor of the insured. *Wilkin*

*Insulation Co.*, 578 N.E.2d at 930. And when viewed in the light most favorable to Hilger, these allegations are broad enough to support Defendants' argument that Hilger was acting as an independent contractor of O'MA when he was soliciting business from the credit unions.[7] Landmark's duty to defend Hilger is therefore triggered.

In an attempt to avoid this result, Landmark argues that Hilger's relationship with O'MA is ambiguous enough to warrant discovery. Pl.'s Resp. Br. at 9. But permitting discovery on this issue would put Hilger in the "awkward position of having to retain counsel to defend himself . . . against the very insurer to whom he is looking to pick up the tab for his defense." *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1002 (7th Cir. 1996). This would result in Hilger "litigating two suits at his own expense," instead of litigating one suit at Landmark's expense. *Id.* Because of these concerns, Landmark would only be entitled to discovery at the duty-to-defend stage if it had a "strong reason to believe" that Hilger really is not a covered person. *Id.* But here, the scales could reasonably tip either way. Maybe Hilger was an independent contractor for O'MA, or maybe Hilger was not, but "a maybe doesn't cancel the duty to defend." *Id.* at 1001. Indeed, when there is a "maybe," the scales must tip toward the insured—here, Hilger. Finally, because the duty to defend is much broader than the duty to indemnify,

---

[7]*Clark Mall General Insurance Co. of America v. Clark Mall, Corp.*, 631 F. Supp. 2d 968 (N.D. Ill. 2009), which Landmark relies on, does not warrant a different conclusion. *See* Pl.'s Resp. Br. at 6-8. The parties in *Clark Mall* disagreed about which entity was a contracting party to the insurance policy. *See* 631 F. Supp. 2d at 974. Here, in contrast, the parties agree that O'MA was the contracting party to the Landmark Policy. The question is instead one of policy coverage: whether the policy also covers Hilger as a "covered person" because of his relationship with O'MA.

*Pekin Ins. Co.*, 930 N.E.2d at 1017, Landmark will still have the opportunity to raise these coverage arguments again if and when the duty to indemnify is in question. Any lingering doubt about Hilger's relationship with O'MA can therefore be resolved at the duty-to-indemnify stage.

In sum, Landmark's duty to defend Hilger has been triggered. The Underlying Complaints are broad enough to support Hilger's claim that he is entitled to a defense because he was acting as an independent contractor for O'MA and is therefore a "covered person" under the Landmark Policy. Defendants' motion for judgment on the pleadings is therefore granted on Counts I and V of Landmark's Complaint and Count I of Hilger's Counterclaims.

### C. Landmark's Duty to Defend All Defendants

Next, Landmark also contends that it has no duty to defend O'Malley, O'MA, and Hilger in the Underlying Lawsuits because Phillips, Hilger, and O'Malley created a separate joint venture to execute all of the loan transactions with the credit unions. Pl.'s Resp. Br. at 9-11. Landmark argues that because Exclusion D excludes coverage for "[a]ny business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured," this separate joint venture is uninsured. *Id.*; *see also* Landmark Policy, Pt. II.D.[8] Landmark ultimately asks the Court to deny Defendants' motions as premature, and to instead allow further discovery on whether Defendants actually formed a joint venture that would trigger Exclusion D. Pl.'s Resp. Br. at 9-11.

---

[8]Landmark divided its declaratory-judgment complaint (the first amended complaint) into separate "counts" when claiming that Defendants were not covered because they are not independent contractors and, separately, because they formed a joint venture.

Just as with Landmark's duty to defend Hilger, further discovery on whether Defendants formed a joint venture is also inappropriate at this duty-to-defend stage. Landmark has the burden of proving that Exclusion D applies, *Santa's Best Craft*, 611 F.3d at 347, and the Underlying Complaints and Landmark Policy must be construed liberally so that all doubts are resolved in Defendants' favor, *Wilkin Insulation Co.*, 578 N.E.2d at 930.

On this joint-venture issue, Landmark argues that the Underlying Complaints and a letter from Hilger to O'Malley demanding indemnification in the Underlying Lawsuits suggest that Phillips, Hilger, and O'Malley entered into a separate joint venture that would be excluded from coverage under Exclusion D of the Landmark Policy. Pl.'s Resp. Br. at 10-11. Hilger's demand letter, for example, references a "Joint Services Agreement" and even quotes a provision from the agreement. R. 27-4, Pl.'s Exh. D, 3/12/13 Tittle Letter at 1-2. And the Michigan Complaint similarly refers to a "joint venture among the credit union lender(s), Allied, CLS and O'Malley." *See, e.g.*, Mich. Compl. ¶ 587. These references, however, do not provide enough detail to determine whether the alleged joint venture qualifies as a "business enterprise" that must be excluded from coverage under Exclusion D. And this doubt about whether the alleged joint venture would fall under Exclusion D must be resolved in favor of the insured (Defendants) and against the insurer (Landmark). *Wilkin Insulation Co.*, 578 N.E.2d at 930.

Again, Landmark argues that further discovery would resolve this ambiguity. Pl.'s Resp. Br. at 11. It is true that discovery would likely resolve the dispute about

whether a joint venture was formed and, if so, whether the venture was a "business enterprise" that was "owned, controlled, operated or managed by" O'MA. Landmark Policy, Pt. II.D. Furthermore, under Illinois law, courts can consider evidence beyond the allegations in the Underlying Complaints in order to determine an insurer's duty to defend in a declaratory-judgment proceeding. *See Clarendon Am. Ins. Co. v. B.G.K. Sec. Servs., Inc.*, 900 N.E.2d 385, 392-93 (Ill. App. Ct. 2008). Discovery at this stage, however, would be improper because the Court cannot consider facts outside of the Underlying Complaints and the insurance policy when doing so might risk determining an "ultimate fact" in the Underlying Lawsuit. *Id.* at 393 ("Illinois courts have restricted consideration of extrinsic evidence when it involves an 'ultimate fact,' meaning a fact that would estop the plaintiff in the underlying case from pursuing one of his theories of recovery or one in which an issue crucial to the insured's liability in the underlying case is determined." (internal quotation marks and citation omitted)); *see also Old Republic*, 84 F.3d at 1002 (explaining that courts should not permit discovery when "that discovery might well undermine possible defenses" by the insured in the underlying lawsuit).

Here, allowing discovery on this alleged joint venture could very well determine an "ultimate fact" in the Underlying Lawsuits. As explained in *Clarendon*, "[a] joint venture, like a partnership, is liable to third persons for wrongful acts of its venturers done in the course of the joint venture agreement." 900 N.E.2d at 393 (quoting *Groark v. Thorleif Larsen & Son, Inc.*, 596 N.E.2d 78, 82 (Ill. App. Ct. 1992)). Therefore, if this Court ultimately held, after allowing

discovery, that there was a joint venture between Phillips, Hilger, and O'Malley, that finding could require vicarious-liability findings against them even for allegations in the Underlying Lawsuits that were pled against each of them only individually. Determining whether a joint venture existed would risk determining an "ultimate fact" in the Underlying Lawsuits, and thus must be avoided. *Clarendon*, 900 N.E.2d at 393. As a result, further discovery is not appropriate, and Landmark has a duty to defend O'Malley, O'MA, and Hilger in both of the Underlying Lawsuits. The Court therefore grants Defendants' motion for judgment on the pleadings on Landmark's Counts III and VII and all counts of O'Malley and O'MA's Counterclaims.

## IV. Conclusion

For the reasons discussed above, Defendants' motions for judgment on the pleadings [R. 56; R. 60] are granted. Judgment is entered against Landmark and for Defendants on Counts I, III, V, VII, and IX of Landmark's Complaint [R. 27], Count I of Hilger's Counterclaims [R. 29], and Counts I and II of O'Malley and O'MA's Counterclaims [R. 32].

Having granted Defendants' motions for judgment on the pleadings, the only count still pending is Count II of Hilger's Counterclaims. Count II of Hilger's Counterclaims is a breach-of-contract claim against Landmark seeking damages for expenses Hilger incurred as a result of Landmark's refusal to defend Hilger in the Underlying Lawsuits. Hilger's Counterclaims ¶¶ 30-36. Because Landmark has a duty to defend Hilger, it will now also have to reimburse Hilger for any defense

expenses Hilger has incurred so far. *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 749-50 (7th Cir. 2008) (citing *A. Kush & Assocs. v. Am. States Ins. Co.*, 927 F.2d 929, 934 (7th Cir.1991) ("[W]hen an insurer has a duty to defend it must reimburse [the insured] for the reasonable fees and costs incurred in that action to date." (internal quotation marks and citation omitted))). In other words, having granted judgment on the pleadings for Hilger's duty-to-defend counterclaim (Count I), it seems to be a foregone conclusion that Hilger would also prevail on his breach-of-contract counterclaim (Count II). The only issue that may remain is quantifying the scope of Hilger's damages. The parties should be ready to discuss how to move forward with Hilger's Count II at the next status hearing on July 8, 2014, at 10 a.m.

ENTERED:

　　　s/Edmond E. Chang　　　
Honorable Edmond E. Chang
United States District Judge

DATE: July 2, 2014